IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| HILLTOP SPECIALTY INSURANCE COMPANY,    Plaintiff <br><br> vs. <br><br> VICTORIA FLOYD, MICHELLE L. WILSON, and SIGNATURE EVENT CENTER, INC.,    Defendants | \*<br>\*<br>\*<br>\*<br>\*   Case No. _____<br>\*<br>\*<br>\*<br>\*<br>\* |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Hilltop Specialty Insurance Company files this Complaint for Declaratory Judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§2201, *et seq.*, seeking a determination of its rights and obligations pursuant to a liquor liability insurance policy previously issued to Michelle L. Wilson d/b/a Signature Event Center, and alleges as follows:

### THE PARTIES

1. Plaintiff Hilltop Specialty Insurance Company ("Hilltop Specialty") (formerly known as Hudson Specialty Insurance Company) is an insurance corporation incorporated under the laws of the State of New York with its principal place of business located in New York.

2. Defendant Victoria Floyd is an adult citizen of the State of Alabama who resides in Montgomery County, Alabama.

3. Michelle Wilson is an adult citizen of the State of Alabama who resides in Montgomery County, Alabama.

4. Signature Event Center, Inc. is an Alabama corporation formed in 2018 by Michelle

Wilson that has a principal place of business located in Montgomery County, Alabama.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this action pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*. Subject matter jurisdiction over this action exists under 28 U.S.C. § 1332 because there exists complete diversity of citizenship between Plaintiff and Defendants, and because the matter in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000.00.

6. Venue for this Declaratory Judgment action is proper in the Middle District of Alabama pursuant to 28 U.S.C. § 1391 because the pertinent insurance policy was issued to Michelle Wilson in Montgomery County, Alabama, and the events giving rise to the claimed injuries and damages to Victoria Floyd alleged occurred in this District.

## THE INSURANCE POLICY

7. Hilltop Specialty previously issued a liquor liability policy bearing the policy number HSLL-41933, effective from 3/10/2020 to 3/10/2021 and having limits of liability of $1 million each common cause with a $1 million aggregate. A true copy of the Hilltop Policy is attached as *Exhibit 1*.

8. The Policy's Declarations lists the "named insured" as "Michelle L Wilson d/b/a Signature Event Center". (Ex.1 at Form No. L-4050D)

9. The Policy's Declarations identifies the named insured as an "individual." (Ex.1 at Form No. L-4050D)

10. The Liquor Liability Coverage Part's "Persons Insured" section in the Policy states in pertinent part:

> **II. PERSONS INSURED**
> Each of the following is an **insured** to the extent set forth below:
>
> a) if the **named insured** is designated in the Declarations as an individual, the person so designated and his or her spouse, but only with respect to the conduct of a business of which the person so designated is the sole owner;

(Ex.1 at Form No. L-4097S page 3)

11. Policy HSLL-41933 further defines "insured" as follows:

> "**insured**" means any person or organization qualifying as an insured in the "Persons Insured" provision of the Liquor Liability Insurance Coverage Part.

(Ex.1 at Form No. L4050J page 2)

12. The Policy does not identify or list the corporation Signature Event Center, Inc., as an insured.

13. The Policy does not have any provisions that would include the corporation Signature Event Center, Inc., as an insured.

14. The Policy's Liquor Liability Coverage paragraph I states in pertinent part:

> The company will pay on behalf of the **insured** all sums which the **insured** shall become legally obligated to pay as **damages** because of injury to which this insurance applies, sustained by any person if such liability is imposed upon the **insured** by reason of the selling, serving or giving of any alcoholic beverage at or from the **insured premises**, and the company shall have the right and duty to defend any suit against the **insured** seeking such **damages**, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

(Ex.1 at Form No. L4097S page 2)

15. The Policy's Conditions section include the following provisions:

> 4. **Insured's Duties in the Event of Injury, Claim or Suit**:
>
>     a. When an injury occurs, written notice containing particulars sufficient to identify the **insured** and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the **insured** to the company or any of its authorized agents as soon as practicable.
>
>     b. If claim is made or suit is brought against the **insured**, the **insured** shall immediately forward to the company every demand, notice, summons or other process received by him or his representative.
>
>     c. …The **insured** shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of the accident.
>
> 5. **Action Against Company**: No action shall lie against the company unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the **insured's** obligation to pay shall have been finally determined either by judgment against the **insured** after actual trial or by written agreement of the **insured**, the claimant and the company.
>
> Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy.

    (Ex.1 at Form No. L4050J pages 4-5)

16. The Policy's Additional Exclusions Endorsement states an Assault & Battery Exclusion as follows:

> 6. **Assault & Battery Exclusion**
> The insurance afforded by this policy does not apply to and will not provide coverage or indemnify the **insured** for any loss, claim, suit, cost, expense, expense reimbursement or liability for **damages**, directly or indirectly based on, attributable to, arising out of, involving, resulting from or in any way related to:
>
> a. **Bodily injury** or **property damage,** arising out of an **assault** and/or **battery**, whether expected or intended from the standpoint of the **insured**, or its employees, patrons, customers, agents or any other person; or

b.  Actual, threatened, provoked or unprovoked **assault** and/or **battery**, whether caused by or at the instigation of or direction of any **insured**, its employees, patrons, customers, agents, or any other person; or

c.   Any failure to prevent or suppress **assault** and/or **battery** or the failure to provide a safe environment by any **insured** or by anyone else for whom any **insured** is or ever was legally responsible; or

d.   The employment, investigation, supervision, training, or retention of a person for whom any **insured** is or ever was legally responsible and whose conduct is included, directly or indirectly, in b. or c. above.

The following are added as items in the DEFINITIONS section of the LIQUOR LIABILITY INSURANCE POLICY PROVISIONS – PART ONE:

"**Assault**" means any intentional or unintentional act that creates an apprehension in another person of an imminent harmful or offensive contact. The act consists of any intentional or unintentional threat of harm accompanied by an apparent, present ability to carry out the threat without regard to whether the act is undertaken while under the influence of any intoxicant.

"**Battery**" means any intentional or unintentional act causing harmful or offensive physical contact with a person, without his or her consent, that entails some injury or offensive touching, without regard to whether the act is undertaken while under the influence of any intoxicant.

"**Suit**" means a civil proceeding in which **damages** because of **bodily injury** or **property damage** to which this insurance applies are alleged. **Suit** includes:

1)  An arbitration proceeding in which such **damages** are claimed and to which the **insured** must submit or does submit with the company's consent; or

2)   Any other alternative dispute resolution proceeding in which such **damages** are claimed and to which the **insured** submits with the company's consent.

THE COMPANY HAS NO DUTY TO DEFEND ANY **INSURED** AGAINST ANY CLAIMS OR **SUITS** SEEKING **DAMAGES** FOR **BODILY INJURY** OR **PROPERTY DAMAGE** FOR CLAIMS OR **SUITS** EXCLUDED BY THIS ASSAULT & BATTERY EXCLUSION. THE COMPANY HAS NO DUTY TO PAY **DAMAGES** OR TO INDEMNIFY THE **INSURED** FOR CLAIMS OR **SUITS** EXCLUDED BY THIS ASSAULT & BATTERY EXCLUSION. IF A **SUIT** OR CLAIM IS BROUGHT AGAINST ANY **INSURED** WHICH CONTAINS ALLEGATIONS RELATING IN ANY WAY TO MATTERS EXCLUDED BY THIS ASSAULT & BATTERY EXCLUSION, THE COMPANY HAS NO OBLIGATION OR LIABILITY TO PAY SUMS OR TO PERFORM ACTS OR SERVICES. SUCH LACK OF COVERAGE, LACK OF DUTY TO DEFEND, LACK OF DUTY TO PAY **DAMAGES** AND LACK

OF DUTY TO INDEMNIFY MAY RESULT IN FINANCIAL LOSS TO THE **NAMED INSURED** AND/OR TO THOSE PERSONS INSURED UNDER THIS POLICY.

(Ex.1 at Form No. EXCL.4 pages 3-4)

### THE UNDERLYING INCIDENT AND LAWSUIT

17. On December 13, 2022, Victoria Floyd filed a Complaint against Wilson and Signature Event Center, Inc. in the Circuit Court of Montgomery County, Alabama, which action was assigned case number 03-CV-2022-901538 (the "Floyd Lawsuit"). A true copy of the Floyd Lawsuit Complaint is attached as *Exhibit 2*.

18. According to Floyd's allegations in the Complaint, Wilson and Signature Event Center, Inc. (referred to therein collectively as "SEC/DNC") operated a late-night club that served alcohol at 5050 Narrow Lane Road, Montgomery, Alabama on December 25 and 26, 2020. (Ex.2 ¶¶2-3, 7, 10) According to the Complaint, SEC/DNC provided security inside and outside the club and routinely hired armed personnel to provide security outside the club. (*Id*. ¶11)

19. According to the Complaint, on December 25, 2020, and in the early morning hours of December 26, 2022, SEC/DNC agents and employees served alcohol to Adreain Isaiah Johnson, Eddy Cane, Sanko Smith, Darryan Motley, and others when they were already visibly intoxicated. (Ex.2 ¶13)

20. According to the Complaint, Johnson and Motley began to argue, in part because they were intoxicated, were forced to leave or chose to leave the inside of the club, and continued their argument in the parking lot in the presence of SEC/DNC security personnel (including one identified as "Jenkins"), who did nothing to stop the

|   |   |
|---|---|
| | argument or otherwise did not act in accordance with the standard of care concerning the argument. (Ex.2 ¶¶14-15) |
| 21. | According to the Complaint, Floyd remained inside the club at all times and was not involved in the argument. (Ex. ¶14) |
| 22. | According to the Complaint: "Ultimately, a shootout ensued, likely involving Johnson and Motley, but also potentially involving Jenkins and/or Cane and/or others. During the shootout, Motley was killed and a stray bullet that traveled into the club struck Floyd in the back, severing her spinal cord." (Ex.2 ¶16) |
| 23. | According to the Complaint: "Johnson, Cane, and/or whomever discharged firearms did so in part because they were intoxicated, but also because, and in the alternative, for purposes of self-defense and/or the defense of others. Specifically, to the extent Jenkins or other SEC/DNC agents or employees discharged a firearm, it was specifically pursuant to their job responsibilities, for the purpose of self-defense, and/or for the defense of others." (Ex.2 ¶18) |
| 24. | According to the Complaint, as a result of being struck by the stray bullet during the shoot-out, Floyd is permanently paralyzed, suffered permanent disfigurement, sustained physical and mental pain, incurred medical bills, lost wages and income, will lose wages and earning capacity in the future, has lost quality of life, and will lose quality of life in the future. (Ex.2 ¶17) |
| 25. | The Floyd Lawsuit Complaint asserted claims for "Dram Shop Liability" ("Count 1") and "Negligence and Wantonness" ("Count 2"). |
| 26. | In Count 1, Floyd alleged the persons involved in the argument were provided alcoholic beverages even though they appeared to be intoxicated and even though |

SEC/DNC agents and employees knew or should have known they were intoxicated. (Ex.2 ¶¶21-22) Floyd alleges these acts violated certain regulations relating to alcohol sales and that "[a]s a consequence of the above-described wrongful actions of the owners, supervisors, agents, and employees of SEC/DNC, the patrons became embroiled in an argument, which led to the shootout, which was a cause, in whole or in part, of Floyd's injuries and damages …." (*Id*. ¶23-25)

27. In Count 2, Floyd alleged that SEC/DNC and their agents and employees undertook a duty to provide competent security at the club for the benefit of their patrons and undertook to follow the standard of care applicable to the security profession. (Ex.2 ¶28) Floyd further alleges SEC/DNC and their agents and employees failed to follow the standard of care by failing to remove weapons from those involved in the argument, failing to oust them from the property sooner, failed to call the police, failing to use reasonable care in using force, including deadly force, failing to employ de-escalation techniques, and failing to follow applicable statutes, regulations, and ordinances. (*Id*. ¶¶28-29) Floyd further alleged it was foreseeable that those involved in the argument and SEC/DNC's agents and employees would act the way they did and that SEC/DNC and its agents and employees negligently and wantonly created an environment where the tragedy was foreseeable to occur. (*Id*. ¶30)

28. Count 2 also alleges: "SEC/DNC agents and employees were incompetent to perform security guard functions, to carry a firearm, and to use force. SEC/DNC, its owners, and its supervisors knew or should have known Jenkins and other SEC/DNC agents and employees were incompetent. Nevertheless, they negligently/wantonly hired, trained, retained, and supervised Jenkins and other SEC/DNC agents and employees

and negligently/wantonly entrusted them with firearms, allowed them to carry firearms, and/or gave them with authority and vestiges to use force." (Ex.2 ¶31)

29. According to Count 2: "As a direct and proximate result of the combining and concurring conduct of SEC/DNC, their agents, and their employees, Floyd was shot, injured, and damaged …." (Ex.2 ¶32)

30. Michelle Wilson did not inform Hilltop Specialty concerning Floyd's injuries during December 2020, or before the end of the policy period in March 2021, or at any time thereafter.

31. Wilson was served with process in the Floyd Lawsuit on January 26, 2023.

32. Wilson did not provide to Hilltop Specialty a copy of the Floyd Lawsuit Complaint or any other lawsuit papers at any time.

33. No other representative, officer, agent, or employee of Signature Event Center, Inc., informed Hilltop Specialty concerning Floyd's injuries at any time.

34. No other representative, officer, agent, or employee of Signature Event Center, Inc., provided to Hilltop Specialty a copy of the Floyd Lawsuit Complaint or any other lawsuit papers at any time.

35. Floyd's attorney sent a copy of the Floyd Lawsuit Complaint to Hilltop Specialty by letter dated March 10, 2023.

36. Hilltop Specialty issued a disclaimer to Michelle Wilson by letter dated May 26, 2023, noting the delay in Hilltop Specialty's learning about the incident and stating there was no coverage due to the Assault & Battery Exclusion.

37. By letter dated July 29, 2025, Floyd's attorney notified Hilltop Specialty that Floyd had filed a consent judgment and asked the Court to enter it within 21 days. A true

copy of the letter is attached as **Exhibit 3**, and a true copy of the proposed consent judgment is attached as **Exhibit 4**.

38. The proposed consent judgment asserts: "Hudson Insurance Group, which includes the Hudson Insurance Company and Hudson Specialty Insurance Company, has refused to defend Wilson/Signature in this action." (Ex.4 ¶2)

39. The proposed consent judgment also asserts "Wilson/Signature desires to reduce their exposure and to end litigation costs because they would be financially unable to defend themselves if this action continued." (Ex.4 ¶3)

40. According to the proposed consent judgment, as a result of their negotiations, Floyd and Wilson stipulated to a consent judgment in the amount of $2,600,000 in compensatory damages.

41. The proposed consent judgment further states in pertinent part as follows:

> Floyd and Wilson/Signature stipulate that Wilson's/Signature's employees caused Floyd's bodily injuries by serving alcohol to Adreain Isaiah Johnson, Eddy Cane, Sanko Smith, Darryan Motley, and others while they were already visibly intoxicated. Floyd and Wilson/Signature further stipulate that the argument and altercation that occurred between and among Adreain Isaiah Johnson, Eddy Cane, Sanko Smith, Darryan Motley, and others on the premises parking lot was caused by their intoxication as well as Wilson's/Signature's and their employees' negligent failure to provide proper security. Floyd and Wilson/Signature also stipulate that the gunshot that injured Floyd was fired by a firearm held by Adreain Isaiah Johnson, Eddy Cane, Sanko Smith, Darryan Motley, or another person who had been served while already visibly intoxicated. Floyd and Wilson/Signature further stipulate that the person who discharged the firearm that injured Floyd discharged the firearm by accident, for defense of himself, for defense of others, and/or while standing his ground as defined by Ala. Code § 13A-3-23(a) and (b) and not exempted by (c).

> (Ex.4 ¶5)

42. The shooting of the stray bullet caused Floyd unwanted harmful physical contact and bodily injuries.

43. Floyd's allegations have not been proven in a trial to a jury, and no judgment has been entered based on a jury verdict.

44. Hilltop Specialty was not a party to the agreement between Wilson, Signature Event Center, Inc., and Floyd that resulted in the consent judgment.

45. An actual controversy exists regarding Hilltop Specialty's obligations, if any, under the Hilltop Policy with respect to the claims asserted in the Floyd Lawsuit and the purported consent judgment.

## COUNT ONE

46. Hilltop Specialty incorporates by reference and restates the allegations of paragraphs 1-4 and 7-45 as though fully set forth herein.

47. Hilltop Specialty requests a declaration that the Alabama corporation, Signature Event Center, Inc., is not an insured under Policy HSLL-41933.

48. Hilltop Specialty requests a declaration that it owes no obligations or duties of any kind to Signature Event Center, Inc., either to defend or to indemnify, because that corporation is not insured under Policy HSLL-41933.

49. Hilltop Specialty requests a declaration that it owes no obligations to indemnify or provide coverage under Policy HSLL-41933 on behalf of the corporation Signature Event Center, Inc., for Floyd's injuries and damages or pay any consent judgment entered against Signature Event Center, Inc., in the Floyd Lawsuit.

## COUNT TWO

50. Hilltop Specialty incorporates by reference and restates the allegations of paragraphs 1-4 and 7-45 as though fully set forth herein.

51. Hilltop Specialty requests a declaration that it owes no obligations or duties of any kind to Wilson under Policy HSLL-41933, either to defend or to indemnify, because of her failure to comply with the Hilltop Policy's conditions and specifically the requirements to provide notice of Floyd's injuries and to provide copies of the lawsuit complaint and other papers.

52. Hilltop Specialty requests a declaration that it owes no obligations or duties of any kind under Policy HSLL-41933 to Wilson, either to defend or to indemnify, because she entered into an agreement and/or assumed an obligation to have judgment entered against her without obtaining Hilltop Specialty's consent or agreement.

53. To the extent Signature Event Center, Inc., qualifies as an "insured," which Hilltop Specialty expressly denies, Hilltop Specialty requests a declaration that it owes no obligations or duties of any kind to Signature Event Center, Inc. under Policy HSLL-41933, either to defend or to indemnify, because of the corporation's failure to comply with the Hilltop Policy's conditions and specifically the requirements to provide notice of Floyd's injuries and to provide copies of the lawsuit complaint and other papers.

54. To the extent Signature Event Center, Inc., qualifies as an "insured," which Hilltop Specialty expressly denies, Hilltop Specialty requests a declaration that it owes no obligations or duties of any kind to Signature Event Center, Inc. under Policy HSLL-41933, either to defend or to indemnify, because the corporation entered into an agreement and/or assumed an obligation to have judgment entered against it without

obtaining Hilltop Specialty's consent or agreement.

55. Hilltop Specialty requests a declaration that it owes no obligations under Policy HSLL-41933 to Floyd because her potential rights under the Hilltop Policy are derivative of Wilson's rights (or the corporation's rights if it is deemed an insured) and that Floyd is bound by Wilson's and the corporation's failure to comply with the Policy's conditions to the same extent as Wilson or the corporation (if it is deemed an insured).

## COUNT THREE

56. Hilltop Specialty incorporates by reference and restates the allegations of paragraphs 1-4 and 7-45 as though fully set forth herein.

57. Hilltop Specialty requests a declaration that the events and actions that caused or resulted in Floyd's injuries and damages are within the unambiguous scope of Policy HSLL-41933's Assault & Battery Exclusion.

58. Hilltop Specialty requests a declaration that Hilltop Specialty did not and does not owe any duty to defend Wilson or Signature Event Center, Inc. (if the corporation is deemed an insured) against the Floyd Lawsuit because of Policy HSLL-41933's Assault & Battery Exclusion.

59. Hilltop Specialty requests a declaration that Policy HSLL-41933's Assault & Battery Exclusion precludes any obligation or duty by Hilltop Specialty to indemnify or provide coverage for Floyd's injuries and damages or pay any consent judgment entered in the Floyd Lawsuit on behalf of Wilson or the corporation Signature Event Center, Inc. (if the corporation is deemed an insured).

*PRAYER FOR RELIEF*

WHEREFORE, Defendant Hilltop Specialty Insurance Company prays as follows:

1. That the Court enter a judgment declaring the rights and obligations of each party with regard to the dispute.

2. That the Court enter a judgment declaring that the Alabama corporation, Signature Event Center, Inc., is not an insured under Policy HSLL-41933.

3. That the Court enter a judgment declaring Hilltop Specialty owes no obligations or duties of any kind to Signature Event Center, Inc., either to defend or to indemnify, because that corporation is not insured under Policy HSLL-41933.

4. That the Court enter a judgment declaring that Hilltop Specialty owes no obligations to indemnify or provide coverage under Policy HSLL-41933 on behalf of the corporation Signature Event Center, Inc., for Floyd's injuries and damages or pay any consent judgment entered against Signature Event Center, Inc., in the Floyd Lawsuit.

5. That the Court enter a judgment declaring that Hilltop Specialty owes no obligations or duties of any kind to Wilson under Policy HSLL-41933, either to defend or to indemnify, because of her failure to comply with the Hilltop Policy's conditions and specifically the requirements to provide notice of Floyd's injuries and to provide copies of the lawsuit complaint and other papers.

6. That the Court enter a judgment declaring that Hilltop Specialty owes no obligations or duties of any kind to Wilson under Policy HSLL-41933, either to defend or to indemnify, because she entered into an agreement and/or assumed an obligation to have judgment entered against her without obtaining Hilltop Specialty's consent or agreement.

7. That the Court enter a judgment declaring that Hilltop Specialty owes no obligations or duties of any kind to Signature Event Center, Inc. under Policy HSLL-41933, either to defend or to indemnify, because of the corporation's failure to comply with the Hilltop Policy's conditions and specifically the requirements to provide notice of Floyd's injuries and to provide copies of the lawsuit complaint and other papers.

8. That the Court enter a judgment declaring that Hilltop Specialty owes no obligations or duties of any kind to Signature Event Center, Inc. under Policy HSLL-41933, either to defend or to indemnify, because the corporation entered into an agreement and/or assumed an obligation to have judgment entered against it without obtaining Hilltop Specialty's consent or agreement.

9. That the Court enter a judgment declaring that Hilltop Specialty owes no obligations under Policy HSLL-41933 to Floyd because her potential rights under the Hilltop Policy are derivative of Wilson's rights (or the corporation's rights if it is deemed an insured) and that Floyd is bound by Wilson's and the corporation's failure to comply with the Policy's conditions to the same extent as Wilson (or the corporation if it is deemed an insured).

10. That the Court enter a judgment declaring that the events and actions that caused or resulted in Floyd's injuries and damages are within the unambiguous scope of Policy HSLL-41933's Assault & Battery Exclusion.

11. That the Court enter a judgment declaring Floyd's injuries are excluded from coverage by Policy HSLL-41933's Assault & Battery Exclusion.

12. That the Court enter a judgment declaring that Hilltop Specialty did not and does not owe any duty to defend Wilson or Signature Event Center, Inc. against the Floyd Lawsuit because of Policy HSLL-41933's Assault & Battery Exclusion.

13. That the Court enter a judgment declaring that Policy HSLL-41933's Assault & Battery Exclusion precludes any obligation or duty by Hilltop Specialty to indemnify or provide coverage for Floyd's injuries and damages or pay any consent judgment entered in the Floyd Lawsuit on behalf of Michelle Wilson or the corporation Signature Event Center, Inc.

14. That the Court enter a judgment declaring that Hilltop Specialty owes no obligations under Policy HSLL-41933 to Floyd because her potential rights under the Hilltop Policy are derivative of Wilson's rights (or the corporation's rights if it is deemed an insured) and that Policy HSLL-41933's Assault & Battery Exclusion precludes any obligation or duty by Hilltop Specialty to indemnify or provide coverage for Floyd's injuries and damages or pay any consent judgment entered in the Floyd Lawsuit.

15. That Hilltop Specialty recover its costs of this action, and such other relief as this Court deems appropriate under the circumstances.

*/s/ R. Scott Hetrick*
R. Scott Hetrick (HETRR5277)
scott.hetrick@arlaw.com

*/s/ Jannea S. Rogers*
Jannea S. Rogers (ROGEJ7403)
jannea.rogers@arlaw.com

ADAMS AND REESE LLP
11 North Water St., Ste.23200
Mobile, Alabama 36602
Phone (251) 433-3234
Fax (251) 438-7733
Attorneys for Plaintiff

PLEASE SERVE DEFENDANTS AS FOLLOWS:

Michelle L. Wilson
3541 Dee Drive
Montgomery, AL 36116

Signature Event Center, Inc.
c/o Registered Agent Michelle L. Wilson
3541 Dee Drive
Montgomery, AL 36116

Victoria Floyd
125 Longview Court
Montgomery, AL  36108